UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:
ALFREDO LOPEZ,                          Case no. 18-21590-BKC-AJC
                                        Chapter 13 Case
        Debtor(s).        /

**DAIMLER TRUST'S MOTION TO CONFIRM THAT THE AUTOMATIC STAY IS NOT IN EFFECT**
**AND CERTIFICATE OF SERVICE OF NOTICE OF HEARING**

Daimler Trust ("Movant"), moves for an order confirming that the automatic stay is not in effect and in support thereof states as follows:

1. On September 20, 2018, debtor(s) filed for Chapter 13 of the Bankruptcy Code.

2. On November 30, 2016, debtor Alfredo Lopez and non-debtor Yanisleidy Garcia Hernandez executed a Motor Vehicle Lease Agreement pertaining to the lease of a **2017 MERCEDES-BENZ GLS CLASS UTILITY 4D GLS450 AWD 3.0L V6 TURBO, VIN 4JGDF6EEXHA846452**. A copy of the lease is attached as Exhibit A.

3. Daimler Trust owns the vehicle. Proof of title is attached as Exhibit B.

4. Debtor Alfredo Lopez and non-debtor Yanisleidy Garcia Hernandez defaulted by failing to remit the monthly payments on the account due for February 8, 2020 (partial payment in the amount of $4.16 due) and March 8, 2020 and April 8, 2020 in the amount of $1,021.26 each, plus non-sufficient funds fees in the amount of $25.00.

5. The payoff balance owed on this loan account is **$53,564.58**, good through April 15, 2020, excluding attorney fees and costs. An

affidavit of indebtedness is attached as Exhibit E.

6. Creditor does not have verifiable proof of insurance.

7. Counsel for Movant has contacted the debtor's attorney prior to the filing of the motion.

8. **Debtor's Seventh Amended Chapter 13 Plan (Order confirming plan entered on June 27, 2019, DE #76) calls for the assumption of the lease and termination of the automatic stay upon confirmation in rem as to the debtor and in personam as to any co-debtor.**

9. A proposed order is attached as Exhibit F.

**WHEREFORE,** Movant requests an order confirming that no stay is in effect in rem so that Movant may repossess or replevy the vehicle, sell the vehicle, enforce its in personam rights against the non-debtor and apply the proceeds of the sale to the debt owed to Movant, and determining that Federal Rule of Bankruptcy Procedure 4001(a)(3) is not applicable.

**I HEREBY CERTIFY** that I am admitted to the bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that on April 21, 2020, copies of the foregoing motion and notice of hearing were transmitted via ECF to the Office of the US Trustee, Nancy K. Neidich, Trustee and Robert Sanchez, Esq., attorney for debtor; and mailed to Alfredo Lopez, debtor, 3030 NW 90 Street, Miami, FL 33147 and Yanisleidy Garcia Hernandez, non-debtor, 3030 NW 90 Street, Miami, FL 33147.

> GERARD M. KOURI, JR., P.A.
> Attorney for Movant
> 5311 King Arthur Avenue, Davie, FL 33331
> Tel: (954)862-1731, Fax (954)862-1732
> 
> By: */s/ Gerard M. Kouri, Jr.*
> _____
> GERARD M. KOURI, JR., ESQ.
> FBN 375969

**Mercedes-Benz Financial Services**

## FLORIDA
### Motor Vehicle Lease Agreement

### The First Class Lease®

Unless otherwise specified, "lease" refers to this Motor Vehicle Lease Agreement; "vehicle" refers to the vehicle described below; "you", "your", and "yours" refer to the Lessee and any Co-Lessee; "we", "us", and "our" refer to the Lessor and, after the lease is assigned, to DAIMLER TRUST, or its successors and assigns; "Assignee" refers to DAIMLER TRUST or its successors and assigns. The "Vehicle Turn-In Fee" is a fee to cover the cost of disposing of the vehicle, commonly referred to as a disposition fee. "Pre-owned" refers to used vehicles. You agree to lease the vehicle from us on the terms and conditions provided for in this lease. The terms and conditions contained in this lease are made on behalf of Lessor and Assignee.

### Dates

The date of this lease is **11/30/2016**.
The scheduled date this lease ends is **12/01/2020** ("Lease End").
The scheduled term of this lease is **48** months ("Lease Term").

### Parties

Lessor (Dealer): **MB OF CUTLER BAY**
Address: **10701 SW 211TH ST**
**CUTLER BAY FL 33189**

Lessee: **ALFREDO LOPEZ**
Lessee: **YANISLEIDY GARCIA HERNANDEZ**
Lessee's Billing Address: **3030 NW 90 STREET**
**MIAMI FL 33147**
**MIAMI-DADE**
(Include County)

Address of principal garage location, if different from Lessee's Billing Address (no P.O. Box):

**N/A**
(Include County)

### Type of Lease

[X] Standard Lease   [ ] Single Payment Lease

If the Single Payment Lease box is checked above, "Monthly Payments" or "First Monthly Payment" are replaced with the words "Single Lease Payment" throughout this lease and the word "Monthly" in section 6.1 on page 2 is deleted.

### Vehicle Information

[X] New   [ ] Pre-owned   VIN: **4JGDF6EEXHA846452**

Year: **2017**   Make: **MERCEDES-BENZ**   Model: **GLS450W4**

Body Style: ____   Odometer Reading: **16**

Primary Intended Use:
[X] Personal   [ ] Business, Commercial, or Agricultural Purposes

If no box is checked, or if the Personal box is checked, you agree to use the vehicle for personal, family or household purposes.

### Electronic Contracting and Signature Acknowledgement

If you are executing this lease using an electronic signature, you agree that (i) this lease agreement is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature, and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract, and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

©2014 Mercedes-Benz Financial Services USA LLC
EF-001-5088 FL (10/16) All rights reserved.

Lessee Initials: _AL_   Co-Lessee Initials: ____

11/30/2016   07:40 pm
Page 1 of 11
54705•1•MBCB-FI



Exhibit A

## Consumer Leasing Act Disclosures

| 1. Amount Due at Lease Signing or Delivery (Itemized below)* $ 8000.00 | 2. Monthly Payments Your first Monthly Payment of $ 1021.26 is due on 11/30/2016, followed by 47 payments of $ 1021.26 due on the 8th of each month. The total of your Monthly Payments is $ 49020.48 | 3. Other Charges (not part of your Monthly Payment) a. Vehicle Turn-In Fee (if you do not purchase the vehicle at Lease End) $ 595.00 b. N/A  $ N/A c. Total $ 595.00 | 4. Total of Payments (The amount you will have paid by the end of the lease) $ 56594.22 |

**\*5. Itemization of Amount Due at Lease Signing or Delivery**

a. Amount Due at Lease Signing or Delivery:
1. First Total Monthly Payment (includes sales/use taxes) .......... $ 1021.26
2. Capitalized Cost Reduction .......... + $ 4604.07
3. Acquisition Fee (if not capitalized) ...... + $ 1095.00
4. Sales/Use Taxes .................. + $ 168.58
5. Refundable Security Deposit ........... + $ N/A
6. Title Fees ...................... + $ N/A
7. License Fees .................... + $ 177.35
8. Registration Fees .................. + $ N/A
9. Predelivery Service Charge† .......... + $ 589.00
10. Prior Lien or Lease Balance .......... + $ N/A
11. N/A                             + $ N/A
12. FL FEES                         + $ 68.50
13. N/A                             + $ N/A
14. CAP RED TAX                      + $ 276.24
15. Total ........................ = $ 8000.00

b. How the Amount Due at Lease Signing or Delivery will be paid:
1. Net Trade-In Allowance ............ $ 0.00
2. Rebates and noncash credits .......... + $ N/A
3. Amount to be paid in cash ........... + $ 8000.00
4. N/A                             + $ N/A
5. Total ........................ = $ 8000.00

†This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the lease.

**6. Your monthly payment is determined as shown below:**

a. Gross Capitalized Cost: The agreed upon value of the vehicle ($ 78990.00) and any items you pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) .... $ 82189.00

b. Capitalized Cost Reduction: The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost ........................ – $ 4604.07

c. Adjusted Capitalized Cost: The amount used in calculating your Base Monthly Payment ..................... = $ 77584.93

d. Residual Value: The value of the vehicle at the end of the lease used in calculating your Base Monthly Payment ................... – $ 40255.00

e. Depreciation and any amortized amounts: The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term ............. = $ 37329.93

f. Rent Charge: The amount charged in addition to the Depreciation and any amortized amounts ............................... + $ 8483.67

g. Total of Base Monthly Payments: The Depreciation and any amortized amounts plus the Rent Charge ........................ = $ 45813.60

h. Lease Payments: The number of payments in your lease ............................ ÷ 48

i. Base Monthly Payment ................. = $ 954.45

j. Monthly Sales/Use Taxes ................ + $ 66.81

k. N/A                                 + $ N/A

l. Total Monthly Payment .................. = $ 1021.26

**7. Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 48,000 miles (Mileage Allowance) for the term of this lease, at the rate of .25 per mile.

**9. Purchase Option at End of Lease Term.** You have an option to purchase the vehicle ("as is") at the end of the lease term for $ 40255.00, plus a Purchase Option Fee of $ 150.00, plus a processing fee of $ N/A, plus all official fees and taxes. See the Purchase Option section on page 7 of this lease for more information.

**10. Other Important Terms.** See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## Consumer Leasing Act Disclosures (Continued)

### 11. Itemization of Gross Capitalized Cost.

| | | |
|---|---|---|
| a. Price of Vehicle | $ | 78990.00 |
| b. Approved-Dealer Installed Equipment | $ | N/A |
| c. Service Contract | $ | N/A |
| d. Extended Warranty | $ | N/A |
| e. Credit Life and/or Credit Disability Premium | $ | N/A |
| f. Current Year Taxes, Title, Licenses, Registration | $ | N/A |
| g. Acquisition Fee | $ | N/A |
| h. Sales/Use Taxes | $ | N/A |
| i. Other Tax (describe) __N/A__ | $ | N/A |
| j. Predelivery Service Charge † | $ | N/A |
| k. Prior Lien or Lease Balance | $ | N/A |
| l. __N/A__ | $ | N/A |
| m. __FC W&T ($ 1940.00)__ | $ | 1940.00 |
| n. __FC PDR ($ 550.00)__ | $ | 550.00 |
| o. __KEY REPLACEMENT ($ 400.00)__ | $ | 400.00 |
| p. __FCIE ($ 309.00)__ | $ | 309.00 |
| q. Total Gross Capitalized Cost | $ | 82189.00 |

† This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the lease.

### 12. Estimated Official Fees and Taxes.
The total estimated amount you will pay for official fees, license, title and registration fees, and taxes over the term of your lease, whether included with your Monthly Payment or assessed otherwise is $ __4429.60__. This is an estimate and the actual total of Official Fees and Taxes may be higher or lower than this estimate. The actual total of Official Fees and Taxes depends on the rates in effect, the value of the vehicle and the garage location of the vehicle at the time the fees and taxes are assessed.

### 13. Mileage Allowance.
The odometer reading in the Vehicle Information section of this lease provides the number of miles existing on the vehicle when you entered this lease ("Existing Miles"). Your Mileage Allowance provided in section 8 refers to miles driven during the Lease Term and does not include the Existing Miles.

If your Mileage Allowance in section 8 on page 2 is greater than __48,000__ "Base Mileage Amount", you have chosen to purchase additional miles for your Mileage Allowance determination. If you have purchased additional miles, then at Lease End, except as provided below, you will be eligible for a credit or refund of __.20__ per mile for any unused additional miles between the Base Mileage Amount and your Mileage Allowance over the term of the lease. You will not receive a refund if the vehicle is destroyed or stolen, you are in default, you purchase the vehicle, or the refund is less than $1.

### 14. Missing Records.
If you do not return the vehicle's maintenance booklets as provided in the Maintenance section of this lease, you will owe a missing records fee in the amount of $ __N/A__.

### 15. New and Pre-owned Vehicle Warranty.
If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer.

If the vehicle is pre-owned, it is not covered by a warranty unless indicated by a check in the corresponding box below:

☐ Remainder of standard new vehicle warranty from manufacturer

☐ Pre-owned vehicle warranty from manufacturer

☐ Pre-owned warranty from other third-party provider

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.

We lease the vehicle to you "AS IS". EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE'S (OR ANY PART OR ACCESSORY THEREOF) CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATION OR WARRANTY WHATSOEVER.

©2014 Mercedes-Benz Financial Services USA LLC
EF-001-5086 FL (10/16) All rights reserved.

Lessee Initials _____ Co-Lessee Initials _____

11/30/2016  07:40 pm
Page 3 of 11
54705*1*MBCB-FI

## Consumer Leasing Act Disclosures (Continued)

**16. Optional Insurance and Other Products.** You are not required to buy any of the optional insurance or other products listed on this page to enter into this lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless you are accepted by the provider. By your initials on this page, you agree that you have received a notice of the terms and cost of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer). These coverages are not provided by the Lessor. You must pursue all matters related to these coverages, including refunds, through the provider. The terms and conditions for these coverages are provided in a separate contract, which you acknowledge that you have received and read.

If the price of these coverages is also included in the itemization of Gross Capitalized Cost, it will be included in the Base Monthly Payments. If not, you have paid for the coverages in full upon signing this lease.

Unless you receive written notification otherwise, credit life and credit disability insurance end on the original due date of the last payment due under the lease.

☐ **Credit Life Provider:**
**N/A**

Initial Coverage: $ _____**N/A**_____ Premium: $ _____**N/A**_____

Lessee Initials: _____**N/A**_____

Co-Lessee Initials: _____**N/A**_____

☐ **Credit Disability Provider:**
**N/A**

Maximum Mo. Benefit: $ _____**N/A**_____ Premium: $ _____**N/A**_____

Lessee Initials: _____**N/A**_____

Co-Lessee Initials: _____**N/A**_____

☐ **Service Agreement Provider:**
**N/A**

Coverage is for **N/A** months or _____**N/A**_____ miles, whichever happens first.

Premium or charge: $ _____**N/A**_____
Lessee Initials: _____**N/A**_____

Co-Lessee Initials: _____**N/A**_____

☐ **Extended Warranty Provider:**
**N/A**

Coverage is for **N/A** months or _____**N/A**_____ miles, whichever happens first.

Premium or charge: $ _____**N/A**_____
Lessee Initials: _____**N/A**_____

Co-Lessee Initials: _____**N/A**_____

## Additional Disclosures

**Lessor's Right to Cancel.** By signing this section, you agree that the provisions of the Lessor's Right to Cancel section on page 10 of this lease will apply, which gives the Lessor the right to cancel if Lessor is unable to assign this lease within ___**15**___ days. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Lessor $ ___**125.00**___ per day from the date of cancellation until the vehicle is returned or repossessed.

Lessee **ALFREDO LÓPEZ**

Co-Lessee **YANISLEIDY GARCIA HERNANDEZ**

**Description of Trade-in:**

| **N/A** | **N/A** | **N/A** | $ **N/A** |
|---|---|---|---|
| Year | Make | Model | Amount of Trade-in Credit used to Reduce Capitalized Cost |

---

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**Notices/Signatures**

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT WHEN YOU SIGN IT.**

**LESSEE**

By signing below, you acknowledge that:

- This lease is completely filled out;
- You have received and read all 11 pages of this lease carefully and agree to all of its terms, INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES ON PAGE 11;
- You have received a completed copy of this lease; and the Lessor may assign all right, title, and interest in this lease, vehicle and Guaranty to anyone.

Lessee **ALFREDO LOPEZ**

By

Title

Driver's License Number/State

Lessee **YANISLEIDY GARCIA HERNANDEZ**

By

Title

Driver's License Number/State

**GUARANTY**

The Guarantor(s) named below absolutely and unconditionally guarantee(s) payment of all amounts owed under this lease. This means if the lessee(s) fail(s) to pay any money owed, guarantor(s) will pay it. All Guarantor(s) shall be jointly and severally liable and agree that this guaranty shall not be affected by any changes to this lease. Guarantor(s) also agree to be liable for all fees and costs, including attorneys' fees, that the Lessor incurs in enforcing this lease or guaranty.

Guarantor(s) has/have received a completed copy of this lease and guaranty at the time of signing.

Guarantor

Print Name

Address

Address

Guarantor

Print Name

Address

Address

**LESSOR SIGNATURE AND ASSIGNMENT**

By signing below, the Lessor accepts the terms and conditions of this Lease. Lessor assigns all right, title and interest to this lease, vehicle and Guaranty to Daimler Trust, subject to the terms and conditions of Lessor's agreement(s) with Mercedes-Benz Financial Services USA LLC.

X _____
Lessor

**FINANCE & INSURANCE MANAGER**
Title

## Notices/Signatures (Continued)

### AUTO PAY DEBIT AUTHORIZATION

Effective on the same date as my lease agreement (the "Agreement"), I (hereafter "I", "me" or "my") hereby authorize Mercedes-Benz Financial Services USA LLC and its successors or assigns ("MBFS") to initiate recurring Electronic Funds Transfers ("EFT") from the account with the financial institution listed below. The amount of each such EFT will be equal to my regularly scheduled payment due under the Agreement. I acknowledge and agree that the amount of my regularly scheduled payment may increase as provided in the Agreement. In the event my regularly scheduled payment due under the Agreement increases by an amount not exceeding $100, I hereby authorize MBFS to increase the amount of the EFT(s) covered by this authorization without providing me notice of such increase. In the event my regularly scheduled payment increases by more than $100, I hereby authorize MBFS to increase the amount of the EFT(s) covered by this authorization after providing me written notice of such increase. I hereby direct the financial institution identified below to honor any such increase in EFT(s) from my account. I represent that the bank account information provided below is for an account located in the United States, and in the event the account is not under my sole ownership, I am authorized to initiate such debit entries from the account. I further agree to provide all banking information requested below, or to deliver a voided check, along with this authorization, drawn on the financial institution identified below. I understand that any financial information provided herein shall be deemed a part of this authorization. I may cancel this authorization by one of the following methods: (a) sending a written cancellation request by regular mail to MBFS Client Care Center - Auto Pay Department, P.O. Box 685, Roanoke, TX 76262, or by overnight mail to MBFS Client Care Center - Auto Pay Department, 13650 Heritage Parkway, Fort Worth, TX 76177; (b) sending an email requesting cancellation addressed to: autopaycancel@daimler.com; (c) sending a cancellation request by facsimile to (800) 283-9632; (d) enrolling as a registered user at MBFS.com and canceling as provided in that website; or (e) providing verbal notice of cancellation by calling (800) 654-6222. This authorization will remain in full force and effect until I cancel it by a method listed herein, MBFS cancels it in writing, or all Agreement obligations are satisfied. If a payment is due on a bank holiday or a weekend, it will be deducted from my account on the next business day. A payment will be deducted on each scheduled due date.

**PLEASE REVIEW ALL PAGES OF THIS LEASE FOR ADDITIONAL TERMS AND CONDITIONS, INCLUDING ARBITRATION DISCLOSURES.**

## Operation and Maintenance

**17. Maintenance.** You agree to maintain, service and repair the vehicle according to the manufacturer's recommendations and any applicable warranty with genuine Mercedes-Benz replacement parts and approved replacement tires. You will keep the vehicle in good operating condition and return the maintenance booklets with the vehicle. You agree to comply with all vehicle recall notices. You agree to pay for all operating costs including, but not limited to gas, oil, inspection and certification fees, fines, towing, and replacement tires. Lessor will not provide maintenance services unless you agree at your option to buy a separate maintenance agreement.

**18. Prohibited Uses of Vehicle.** You agree not to use or allow anyone else to use the vehicle: (a) in a way that violates the law or the terms of your insurance policy or that causes cancellation or suspension of any applicable warranty; and (b) to transport goods or people for pay. You also agree not to take the vehicle outside the United States; however, you may take the vehicle to Canada or Mexico for 30 days or less.

In addition, you agree not to use or allow anyone else to use the vehicle for more than 30 days outside the state where you first registered it or recorded the title unless you first have our written consent.

You will not change or modify the vehicle's body or interior in any way unless you first get our written consent. If you add parts to the vehicle that cannot be removed without harming the vehicle's usefulness or value, you understand that these parts become our property. We may inspect the vehicle at any reasonable time.

You will not assign or sublease any interest in the vehicle or this lease. You will keep the vehicle and lease free from all liens.

You agree that you and anyone else that uses the vehicle are liable for any injury, death, or damage arising out of the use of the motor vehicle, and that we are not liable for any such injury, death or damage.

©2014 Mercedes-Benz Financial Services USA LLC
EF-001-5086 FL (10/16) All rights reserved:

Lessee Initials _____  Co-Lessee Initials _____

11/30/2016  07:40 pm
Page 6 of 11
54705*1*MBCB-FI

| Insurance |

**19. Vehicle Insurance. THE VALID AND COLLECTIBLE LIABILITY INSURANCE AND PERSONAL INJURY PROTECTION INSURANCE OF ANY AUTHORIZED RENTAL OR LEASING DRIVER IS PRIMARY FOR THE LIMITS OF LIABILITY AND PERSONAL INJURY PROTECTION COVERAGE REQUIRED BY SECTIONS 324.021(7) AND 627.736, FLORIDA STATUTES.**

You agree to provide primary insurance coverage as indicated below during the lease and until the vehicle is returned: (a) liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury and $50,000 per accident for property damage; (b) collision insurance for the actual value of vehicle and with a deductible no higher than $2,500; (c) comprehensive fire and theft insurance for the actual value of vehicle and with a deductible no higher than $2,500; and (d) uninsured motorist coverage as required by law in the state where the vehicle is registered. You may obtain insurance from an insurer of your choice which is reasonably acceptable to us. The insurance policy must name Assignee as additional insured and loss payee and you must provide us with a copy of your policy. If you carry excess or umbrella liability insurance, it will include our interest to the extent provided by law. The policy must require the insurance company to notify us at least 30 days in advance of any changes in coverage or cancellation. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure, or impoundment of the vehicle. For claims arising under your insurance that concern physical damage to the vehicle, you appoint us your attorney-in-fact to initiate, settle or release the claim. You authorize us to cash or negotiate checks or drafts or other payments received from your insurance company and endorse your name on such items if you are a payee. You also give us a security interest in any money paid under your insurance.

**No physical damage or liability insurance coverage for bodily injury or property damage caused to others is included in this lease.**

**20. Total Vehicle Loss/Gap Waiver.** If the vehicle is subject to a total loss due to collision, destruction or theft, you will pay us the Gap Amount which is the difference between the Early Termination Liability and the insurance proceeds we receive based on the total loss. We agree to waive the Gap Amount if you had the vehicle insurance required by this lease at the time of total loss, in which case you will pay to us the sum of: (a) all unpaid amounts that are due or past due under this lease; plus (b) the amount of your insurance deductible; plus (c) any other amounts that were subtracted from the vehicle's actual cash value to determine the insurance proceeds we received for the total loss. If this is a single payment lease, you will receive a refund equal to your lease payment divided by your Lease Term (as shown on page 2 of this lease) times the number of months left in this lease at the time of the loss of the vehicle. If you do not have insurance on the vehicle or your insurance company denies part or all of your claim, you will be in default and will pay us the early termination liability set forth in section 23.

This subsection will not apply and you will be in default if you accept a cash value settlement from your insurance company without first receiving our consent and forwarding any such settlement to us.

| End of Lease |

**21. Purchase Option.** If you purchase the vehicle at any time, you agree to re-register and re-title the vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration.

**a. Scheduled Termination.** At the end of the scheduled Lease Term, you may purchase the vehicle "as is" for the amount set forth in section 9 on page 2 of this lease.

**b. Before Scheduled Termination.** At any time before the scheduled Lease End, you have an option to purchase the vehicle "as is" for the Early Purchase Option Price (described below).

**1) Standard Lease - Early Purchase Option Price.** If this is a Standard Lease as indicated on page 1 of the lease, the Early Purchase Option Price is the sum of: (a) any lease payments or other amounts due under the lease at the time of termination; (b) all fees and taxes assessed on or billed in connection with this lease or the vehicle; (c) an amount equal to the Vehicle Turn-In Fee on page 2 of this lease; (d) the Adjusted Lease Balance (explained below); and (e) 4% of the Adjusted Lease Balance.

The Adjusted Lease Balance is calculated by reducing the Adjusted Capitalized Cost each month, on each monthly payment due date, by the difference in the base monthly payment and the part of the rent charge earned in that month calculated on a constant yield basis.

**2) Single Payment Lease - Early Purchase Option Price.** If this is a Single Payment Lease as indicated on page 1 of this lease, the Early Purchase Option Price is: (a) any lease payments or other amounts due under the lease at the time of termination; plus (b) an amount equal to the Vehicle Turn-In Fee on page 2 of this lease; plus (c) all fees and taxes assessed on or billed in connection with this lease or the vehicle; plus (d) the Residual Value printed on page 2 of this lease; plus (e) 4% of the Residual Value; less (f) the unearned rent charges you paid calculated on a constant yield basis.

**22. Return of Vehicle.**

**a. Scheduled Termination.** If this lease is not terminated early and you do not purchase the vehicle, you will, at Lease End: (1) return the vehicle to us at the time and place we specify at your expense; (2) complete and sign odometer statement and, if not already signed, the vehicle condition report; (3) pay the following amounts: (a) any amount owed for excess wear and use (explained in section 22.a.2.); plus (b) all unpaid amounts that are due or past due under this lease; plus (c) the Vehicle Turn-In Fee provided on page 2 of this lease; plus (d) any official fees and taxes related to the scheduled termination; plus (e) the Missing Records Fee in the amount provided on page 3 of this lease, if any maintenance booklets are not returned with the vehicle. You agree to cooperate in the completion of the condition report, which will be prepared close to or at Lease End. You understand that we may engage a third party to conduct the vehicle inspection and to prepare the condition report.

**1) Failure to Return Vehicle.** If, at Lease End, you do not return the vehicle to us or you do not exercise your option to purchase the vehicle, you will be in default and you must pay the purchase price in section 9 unless we agree to an extension in writing. If this is a Standard Lease, as indicated on page 1 of this lease, you will pay an amount equal to your Total Monthly Payment provided on page 2 of this lease for each month that you retain the vehicle after Lease End, or part thereof, until we receive the purchase price or written extension agreement. If this is a Single Payment Lease, as indicated on page 1 of this lease, you will pay an amount equal to the Total Single Payment divided by the Lease Term for each month, or part thereof, that you retain the vehicle past Lease End until we receive the purchase price or extension agreement. Our acceptance of any lease payments after Lease End does not give you the right to keep the vehicle and it does not mean that we agree to extend this lease.

©2014 Mercedes-Benz Financial Services USA LLC
EF-001-6088 FL (10/16) All rights reserved.

Lessee Initials _____  Co-Lessee Initials _____

11/30/2016  07:40 pm
Page 7 of 11
54705*1*MBCB-FL

## End of Lease (Continued)

**2) Standards for Excess Wear and Use.** Unless you are charged an Early Return of Vehicle Charge determined by Calculation A or C in section 22.b. of this lease, if you do not purchase the vehicle, you agree to pay for excess wear and use. Excess wear and use includes a charge for any miles driven in excess of the Mileage Allowance and the estimated cost of repairs to the vehicle that are the result of excess wear and use, whether or not we actually repair the vehicle. In addition to miles driven in excess of your Mileage Allowance, excess wear and use includes, but is not limited to: (a) damage to the major driveline components (engine, transmission, differential) not covered by warranty; (b) damage to the electrical system or battery; (c) damage to the frame; (d) missing or broken parts, equipment or accessories, including optional factory equipment, keys or remote keyless entry devices, tool kits, or anything else that was in or on the vehicle when you received it; (e) missing tires, tires that are lesser quality than the original tires, tires that are not produced by the same manufacturer, tires of unequal size (diameter), tires that have sidewall plugs, cuts or exposed cords, tires that have less than 1/8 inch tread, or wheels that are broken or cracked; (f) damage to the body, fenders, metalwork, lights, trim or paint, including but not limited to dents or rust; (g) damaged or stained dash, floor covers, seats, or any other part of the interior; (h) nonfunctioning, discolored, tinted, or broken glass, including stars, cracks, holes or plugs; (i) failure to maintain the vehicle according to the manufacturer's specifications; (j) after market alterations not installed by an authorized dealer; (k) water damage; (l) damage that makes the vehicle run in a noisy, rough, or improper way, or that makes the vehicle unsafe or unlawful; and (m) any other damage to the interior or exterior that is beyond ordinary wear and use.

**b. Early Termination by You.** If you are not in default and you do not purchase the vehicle, you may terminate this lease at any time. If you terminate your lease before the Lease End, you must return the vehicle to us and pay your Early Return of Vehicle Charge (described below).

**1) Standard Lease - Early Return of Vehicle Charge.** If this is a Standard Lease, as indicated on page 1 of this lease, your Early Return of Vehicle Charge is determined by Calculation A or Calculation B, below, whichever is less:

**Calculation A:** (1) All unpaid Monthly Payments that have accrued up to the date of termination; plus (2) All other unpaid amounts, other than excess wear and use and mileage charges, due under the lease; plus (3) All official fees and taxes related to the lease or the vehicle in connection with lease termination; plus (4) The Vehicle Turn-In Fee; plus (5) Any positive amount determined by subtracting the vehicle's then Fair Market Wholesale Value from the Adjusted Lease Balance; plus (6) An early termination fee of 3.15% of the remaining Base Monthly Payments if the Lease Term is 1-59 months or 4.24% of the remaining Base Monthly Payments if the Lease Term is 60 months or more.

**Calculation B:** (1) All Monthly Payments not yet due under the lease; plus (2) All unpaid Monthly Payments that have accrued up to the date of termination; plus (3) All other unpaid amounts due under the lease; plus (4) All official fees and taxes related to the lease or the vehicle in connection with lease termination; plus (5) The Vehicle Turn-In Fee; plus (6) The amount, if any, for excess wear and use, which includes a charge for excess mileage.

**2) Single Payment Lease - Early Return of Vehicle Charge.** If this is a Single Payment Lease, as indicated on page 1 of this lease, your Early Return of Vehicle Charge is determined by Calculation C or Calculation D, below, whichever is less:

**Calculation C:** (1) All unpaid amounts due under the lease, other than excess wear and use and mileage charges; plus (2) All official fees and taxes related to the lease or the vehicle in connection with lease termination; plus (3) The Vehicle Turn-In Fee; plus (4) Any positive amount determined by subtracting the vehicle's then Fair Market Wholesale Value from the Residual Value; less (5) 86.6% of the unearned rent charge calculated on a constant yield basis if the Lease Term is 1-59 months or 85.1% of the unearned rent charge calculated on a constant yield basis if the Lease Term is 60 months or more.

**Calculation D:** (1) All unpaid amounts due under the lease; plus (2) All official fees and taxes related to the lease or the vehicle in connection with lease termination; plus (3) The Vehicle Turn-In Fee; plus (4) The amount, if any, for excess wear and use, which includes a charge for excess mileage.

**3) Fair Market Wholesale Value.** The Fair Market Wholesale Value will be determined in one of the following ways: (a) in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles; (b) by disposing of the vehicle in a commercially reasonable manner; (c) within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the vehicle that could be realized at sale; the appraised value shall be a binding determination of the Fair Market Wholesale Value; (d) if the vehicle is subject to a total loss due to collision, destruction or theft as determined by us, the Fair Market Wholesale Value will equal: (i) the amount of any proceeds we receive from your insurance; plus (ii) the amount of our deductible under such insurance if that amount has been paid to us; if there are no insurance proceeds, the Fair Market Wholesale Value will be zero.

## 23. Default.

**a. Early Termination by Us.** We may terminate this lease at anytime if you are in default (see section 23.b.) and you must pay us your Early Termination Liability. Your Early Termination Liability equals all expenses related to recovering, obtaining, storing and preparing for sale and selling the vehicle, including, but not limited to, reasonable attorney fees, collection costs, and court costs, to the extent not prohibited by law; plus: (1) If this is a Standard Lease as indicated on page 1 of this lease, the amount determined by Calculation A in section 22.b.; or (2) If this is a Single Payment Lease as indicated on page 1 of this lease, the amount determined by Calculation C in section 22.b.

**b. Events of Default.** You will be in default if: (1) you fail to make any payment when due, including any amount required to be paid under the sections of this lease entitled RETURN OF VEHICLE, Scheduled Termination or Early Termination by you; (2) you break any promise or conditions in the lease or any other agreement with us; (3) you fail to maintain required insurance or you do anything that invalidates your required insurance; (4) you fail to return the vehicle as we specify; (5) you gave false or misleading information to us on your credit application or other document; (6) you die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you, or you dissolve active business affairs; (7) the vehicle is seized, or levied upon by any government or legal process; (8) the vehicle is destroyed, abandoned, stolen or damaged beyond repair; (9) your driver's license expires or is suspended, revoked, or canceled; or (10) anything else happens that we reasonably believe in good faith endangers the vehicle or your ability to pay.

©2014 Mercedes-Benz Financial Services USA LLC
EF-001-5086 FL (10/16) All rights reserved.

Lessee Initials _____ Co-Lessee Initials _____

11/30/2016  07:40 pm
Page 8 of 11
54705•1•MBCB-FL

## End of Lease (Continued)

c. **Remedies for Default.** If you are in default, you will owe your Early Termination Liability provided in section 23.a. and we may take any or all of the following actions: (1) terminate this lease and your rights to the vehicle; (2) take possession of the vehicle without prior demand, unless notice or demand is required by law; (3) take reasonable action to prevent the default or our loss; (4) require you to return the vehicle and any related records; (5) make a claim for insurance or service contract benefits or refunds available on your default and apply such amount to the amount you owe; or (6) use any remedy we have at law or in equity. You agree to reimburse us for any amounts we choose to pay under this lease that you are required to pay, including amounts we pay to cover your default or enforce our right to the vehicle. You agree that in the event we hire an attorney to collect any amount due or enforce any right or remedy under this lease, you shall pay our attorney fees and court costs.

If we take possession of the vehicle as provided in section 23.c.2, we may take any personal property in the vehicle. We will hold the personal property for you for 20 days. If you do not pick up the property within that time, we may dispose of it in any manner.

We may garnish your wages to collect the deficiency. If you are or become a Head of Family with Disposable Earnings, as those terms are defined in Fla. Stat. §222.11 (1) (b) - (c), you agree that we may garnish your Disposable Earnings, to the extent they are greater than $500, in an amount not to exceed the maximum amount allowed under the Federal Consumer Credit Protection Act.

**24. Interest on Unpaid Amounts.** You understand and agree that upon termination of this lease for any reason, if you do not pay us any amount you owe us upon our demand, you will owe us, in addition to the amount unpaid, interest on such amount at the annual rate of 6% (or such lesser maximum rate as applicable law permits).

## Additional Information

**25. Assignment and True Lease.** You understand that this is a true lease and that you do not have equity or other ownership rights in the vehicle unless you purchase it from us. You may not assign, sell, sublease or arrange an assumption of your interests or rights under this lease or in the vehicle without our written permission. You understand that we may assign our rights and obligations under this lease at anytime or to anyone, including Daimler Trust, without first notifying you. You agree and grant us permission to provide information about you, the vehicle or this lease to our affiliates at any time, subject to the terms of the Assignee's Privacy Policy. Lessor and its employees are not agents of Assignee and have no authority to obligate Assignee. Mercedes-Benz Financial Services USA LLC ("MBFS"), as the servicing agent for Daimler Trust, has the power to act on Daimler Trust's behalf to administer, enforce and defend this lease. You agree to pay all amounts due under this lease to MBFS or as otherwise directed by MBFS.

**26. Late Charges/Returned Payment and Other Fees/Fines and Tickets.** If we do not receive the entire amount of your Monthly Payment within 10 days after it is due, you will pay us a late fee of $50 or 5% of the unpaid amount whichever is less. If any check, draft, order, or other payment instrument is returned to us for any reason, or if any authorized electronic debit is not paid, you will pay us a fee of $25. You agree to pay all fines and tickets imposed on the vehicle or its driver. If you do not pay such fines or tickets and we pay, you will reimburse us, and pay us an administration fee of $25 to the extent permitted by law. Unless prohibited by applicable law, you agree to pay a processing fee in connection with any payment you make to us by authorizing us, or a bill payment service, orally or in writing, to write a check on your behalf, use automated clearing house procedures, or use any other commercially accepted practice to make your payment from your checking or other account. The amount of the processing fee will be the amount you agree to, orally or otherwise, at the time you authorize us or the bill payment service to process your payment.

**27. Indemnification.** You will defend, indemnify and hold harmless Lessor and Assignee from and against any loss and all losses or damages to the vehicle and from all claims, losses, suits, actions, liabilities, costs and expenses (including, but not limited to reasonable attorney fees) related to and/or against the use, operation or condition of the vehicle.

**28. Notices/General.** We will send notices and correspondence to you at the billing address you provided on this lease. If this address or the garage address changes, you will inform us, in writing, within 30 days of the change. To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us. Section headings in this lease are for convenience of reference only and are not part of the lease for any other purpose.

As part of a like-kind exchange program, the Assignee has engaged MBF Account Services LLC as a qualified intermediary. Dealer is hereby notified that the Assignee has assigned to MBF Account Services LLC its rights (but not its obligations) in the agreement for the purchase of this vehicle.

In the event the Lessee purchases the vehicle, Lessee is hereby notified that the Assignee has assigned to MBF Account Services LLC its rights (but not its obligations) in the agreement for the sale of this vehicle.

**29. Refundable Security Deposit.** The Refundable Security Deposit may be used to pay all amounts that you fail to pay under this lease or to satisfy any remedy for Default. Any portion of the Refundable Security Deposit not applied to amounts that you owe will be returned to you after termination of this lease and our determination that the amounts you owed at the end of this lease have been paid. Even if we have refunded to you all or any portion of the Security Deposit, you are still responsible for amounts due and owing after termination of this lease, such as personal property tax. You may not apply any portion of the Security Deposit to a Monthly Payment. You will not earn interest on the Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Security Deposit will neither be paid to you nor applied to reduce your obligations under this lease.

**30. Modification.** Any change to this lease must be in writing and signed by Assignee, however, if permitted by law, extensions, deferral, or due date changes may be agreed to orally by you and Assignee and we will send you written confirmation.

©2014 Mercedes-Benz Financial Services USA LLC
EF-001-5088 FL (10/16) All rights reserved.

Lessee Initials _____ Co-Lessee Initials _____

11/30/2016  07:40 pm
Page 9 of 11
54705*1*MBCB-FL

*Additional Information (Continued)*

**31. Enforceability.** Each person who signs this lease is jointly and severally liable under this lease and for all payments, whether or not we try to collect from the other signers. We do not have to repossess the vehicle to exercise any other rights. We do not give up any of our rights by delaying or failing to exercise them. This lease is subject to the laws of the state where it was signed. This lease is the entire agreement between you and us and is binding on anyone who assumes our interest in it. We are not bound by any statements or representations made by agents or sales people if not contained in this lease. We make no promises regarding any tax benefits to you from leasing. If we waive any provision of this lease or if any provision in this lease is held to be unenforceable, void, illegal or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provisions, unless otherwise provided in this lease.

**32. Delivery.** You accept delivery of the vehicle described in this lease and acknowledge that it is equipped as described, is in good operating order and condition, and has the odometer reading recorded on page 1 of this lease in the Vehicle Information section.

**33. Payment Obligations.** You may not change or stop any lease payments for any reason, even if you do not receive an invoice, and even if the vehicle is stolen, destroyed, seized by the government or a court, experiences mechanical problems, or does not satisfactorily perform. If you experience mechanical or other difficulties with the vehicle, you will pursue these issues with the manufacturer.

**34. Taxes, Registration and Titling.** You agree to title, register and license the vehicle in the state in which it is primarily located. You are aware that the vehicle is to be titled in our name. You must request any power of attorney required from us to title, register, or license the vehicle. You agree to promptly pay all title, registration, license, inspection, testing, personal property taxes, and other fees, taxes and charges imposed by government authorities in connection with the vehicle, this lease, or any amounts due or payable arising from this lease. We may pay any or all license, title and registration costs, fees, charges and taxes relating to the vehicle or this lease that you do not pay and you agree to reimburse us for all such amounts. We have no duty to account to you for the fees, charges, or taxes we pay. You are responsible for any fines, penalties, and/or interest if you do not pay a bill when it is due. If the vehicle is primarily located in a state other than a state that bills you directly for personal property tax, we will invoice you for personal property tax, if applicable, after we have been billed by the taxing authority. During the term of this lease, you agree to pay the invoice amount on or before your next Monthly Payment due date. We may receive some bills after this lease has ended. If this lease has ended, you agree to pay us within 10 days of being invoiced, if this is a Standard Lease, or within 10 days of being invoiced if this is a Single Payment Lease. If the vehicle is primarily located in a state that bills you directly for personal property tax, you will pay the state DIRECTLY for the personal property tax owed on the vehicle. If you do not pay, and we pay the personal property tax, you will reimburse us the cost of the personal property tax and any penalties incurred.

**35. Security Interest.** You grant us a security interest, to the extent permitted by law, in the following, to secure performance of your lease obligations: (1) proceeds of any insurance with respect to the vehicle; (2) proceeds of any service contract purchased with this lease; and (3) any unearned premiums or refunds of any of the foregoing. You will not allow any lien or encumbrance to attach to the vehicle.

If this is a standard lease as indicated on page 1 of this lease, Daimler Trust grants a security interest in the vehicle to Daimler Title Co., as collateral agent, pursuant to the Collateral Agency Agreement dated as of August 1, 2007, as amended.

**36. Power of Attorney.** You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney-in-fact to act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this lease, and apply the refunded premium or cost to your outstanding balance if you are in default. Your grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations you owe under this lease are paid in full.

### 37. Lessor's Right to Cancel.

1) Lessor agrees to deliver the vehicle on the date this lease is signed by Lessor and you. You understand that it may take Lessor a few days to verify your credit, locate financing for you on the exact terms shown in this lease, and assign this lease to a financial institution. You agree that Lessor has the number of days stated on page 4 of this lease to assign the lease. You agree that if Lessor is unable to assign this lease within the stated time period to a financial institution with whom Lessor regularly does business under an assignment acceptable to Lessor, Lessor may cancel this lease. Lessor's right to cancel ends upon assignment of this lease.

2) If Lessor elects to cancel per Paragraph 1 above, Lessor will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new lease with different terms or you may pay with alternate funds arranged by you.

3) Upon receipt of the notice of cancellation, you must return the vehicle to Lessor within 48 hours in the same condition as when delivered other than reasonable wear for the time you had it. Except as described below, Lessor must give you back all consideration Lessor has received from you in connection with this lease.

4) If the vehicle is not returned within 48 hours after your receipt of the notice of cancellation, you agree that Lessor may take it back using any lawful means (including repossession if done peacefully) and you will be liable for all expenses incurred by Lessor in taking the vehicle from you, including reasonable attorney fees. If you fail to return the vehicle within 48 hours after receipt of notice of cancellation, you agree to pay Lessor the charge shown in the Lessor's Right to Cancel provision on page 4 of this lease for each day you do not return the vehicle after receipt of the notice of cancellation.

5) While the vehicle is in your possession, all terms of this lease, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Lessor may deduct from any consideration due to you under Paragraph 3 above Lessor's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Lessor cancels this lease, the terms of this Lessor's Right to Cancel provision (including those on page 4 of this lease) remain in effect even after you no longer have possession of the vehicle.

©2014 Mercedes-Benz Financial Services USA LLC
EF-001-5088 FL (10/16) All rights reserved.

Lessee Initials _____ Co-Lessee Initials _____

11/30/2016 07:40 pm
Page 10 of 11
54705•1•MBCB-FI

## Important Arbitration Disclosures

**38. Arbitration.** The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.
2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial.
3. You agree to give up any right you may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others.
4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit.
5. Other rights that you and/or we would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this lease, Arbitration section or the arbitrability of any issue), between you and us or any of our employees, agents, successors or assigns, which arises out of or relates to a credit application, this lease, or any resulting transaction or relationship arising out of this lease shall, at the election of either you or us, or our successors or assigns, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of and be administered by the National Center for Dispute Settlement, 43230 Garfield Road, Suite 130, Clinton Township, MI 48038 or the Internet at http://www.ncdsusa.org/, or any other organization that you may choose subject to our approval.

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. Unless the rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent you from requesting that the applicable arbitration entity reduce or waive your fees, or that we voluntarily pay an additional share of said fees, based upon your financial circumstances or the nature of your claim.

This lease evidences a transaction involving interstate commerce. Any arbitration under this lease shall be governed by the Federal Arbitration Act (9 USC 1, et seq.). Judgment upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both you and Lessor and Lessor's successors and assigns retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

If any clause within this Arbitration section, other than clause 3 or any similar provision dealing with class action, class arbitration or consolidation, is found to be illegal or unenforceable, that clause will be severed from this Arbitration section, and the remainder of this Arbitration section will be given full force and effect. If any part of clause 3 or any similar provision dealing with class action, class arbitration or consolidation is found to be illegal or unenforceable, then this entire Arbitration section will be severed and the remaining provisions of this lease shall be given full force and effect as if the Arbitration section of this lease had not been included in this lease.

## VEHICLE LOCATION CONSENT

**For Mercedes-Benz Vehicles:** Notwithstanding anything in the Mercedes-Benz mbrace™ Subscriber Service Agreement (the "Subscriber Agreement") or any other similar agreement or document provided or made available to you in connection with your Mercedes-Benz vehicle, and except as prohibited by applicable law, if you are in default (as defined herein) and your vehicle has a data recorder or the capability to report the vehicle's location through your use of the mbrace™ services or otherwise, you consent and authorize us and our agents, representatives, and affiliates including Mercedes-Benz USA, LLC ("MBUSA") and any service provider acting with it or on its behalf, including ATX Group, Inc. ("ATX") and Verizon Telematics, Inc. ("VTI"), to (a) obtain data from the vehicle including the location of the vehicle, (b) release the data to us, MBUSA, ATX, VTI or their agents, representatives, and affiliates and (c) use such data for the purpose of locating the vehicle, including with respect to the repossession of it. You agree that notwithstanding anything to the contrary in the Subscriber Agreement, MBUSA and its agents, representatives, and affiliates (including but not limited to ATX and VTI) are intended to be protected by the consent you are giving in this document, and that those parties are and will be relying upon such consent as releasing them from any potential liability for such use of any data. You also agree that your consent will supersede any past or future sending of notice by you under the Subscriber Agreement, allowing you to request that certain information retrieved from your vehicle's sensing or diagnostic modules not be used (or any other comparable section of the Subscriber Agreement or other document), and that your consent shall be fully enforceable and effective notwithstanding your sending any such notice, or exercising any such right.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you, on behalf of you, your successors and your assigns, intentionally, knowingly and irrevocably hereby release and discharge us and our affiliates, officers, directors, managers, members, insurers, shareholders, employees, attorneys, agents, representatives, predecessors, successors, assigns and all others acting by, through, under or in concert with them (the "Releasees") including, without limitation, MBUSA and any service provider acting on MBUSA's behalf, from all claims, liabilities, obligations, damages, losses, costs, expenses, debts, liens, suits, actions and/or causes of action, at law or in equity, of every kind, character and nature whatsoever, whether known or unknown, suspected or unsuspected, contingent or fixed, direct or indirect, which have existed or may have existed, or which do exist or which hereafter can, shall or may exist in any way based upon or related to the subject matter of this consent. This includes, in the case of MBUSA, ATX, VTI and anyone acting with them, any claim based on an allegation that activities to locate or repossess your vehicle as consented to herein were undertaken without you being in default. You represent, warrant and covenant not to sue, or commence an arbitration or other proceeding against any of the Releasees, to enforce any charge, claim or cause of action released herein.

©2014 Mercedes-Benz Financial Services USA LLC  
EF-001-5088 FL (10/16) All rights reserved.

Lessee Initials _____  Co-Lessee Initials _____

11/30/2016   07:40 pm  
Page 11 of 11  
54705*1*MBCB-FI

## STATE OF FLORIDA — LIEN SATISFACTION

Mail Lien Satisfaction to: Dept of Highway Safety and Motor Vehicles, Neil Kirkman Building, Tallahassee, FL 32399-0500

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| 4JGDF6EEXHA846452 | 2017 | MERZ | UT | 5178 | | 125633314 |

Date of Issue 12/14/2016

Registered Owner:
DAIMLER TRUST
PO BOX 997545
SACRAMENTO   CA 95899-7545

Mail To:
11/29/2016
DAIMLER TITLE CO
PO BOX 997545
SACRAMENTO   CA 95899

Lien Release
Interest in the described vehicle is hereby released
By _____
Title _____
Date _____

**IMPORTANT INFORMATION**
1. When ownership of the vehicle described herein is transferred, the seller MUST complete in full the Transfer of Title by Seller section at the bottom of the certificate of title.
2. Upon sale of this vehicle, the seller must complete the notice of sale on the reverse side of this form.
3. Remove your license plate from the vehicle.
4. See the web address below for more information and the appropriate forms required for the purchaser to title and register the vehicle, mobile home or vessel: http://www.flhsmv.gov/html/titlinf.html

---

## CERTIFICATE OF TITLE

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| 4JGDF6EEXHA846452 | 2017 | MERZ | UT | 5178 | | 125633314 |

| Prev. State | Color | Primary Brand | Secondary Brand | No. of Brands | Use | Prev Issue Date |
|---|---|---|---|---|---|---|
| | WHI | | | | LEASE | |

| Odometer Status or Vessel Manufacturer or OH use | Hull Material | Prop | Date of Issue |
|---|---|---|---|
| 16 MILES   11/29/2016 ACTUAL | | | 12/14/2016 |

Lien Release
Interest in the described vehicle is hereby released
By _____
Title _____
Date _____

Registered Owner
DAIMLER TRUST
PO BOX 997545
SACRAMENTO   CA 95899-7545

1st. Lienholder
11/29/2016
DAIMLER TITLE CO
PO BOX 997545
SACRAMENTO   CA 95899

DIVISION OF MOTORIST SERVICES — TALLAHASSEE, FLORIDA — DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

Robert R. Kynoch, Director
Terry L. Rhodes, Executive Director

Control Number 128327506
125594

---

**TRANSFER OF TITLE BY SELLER** (This section must be completed at the time of sale.)

Federal and/or state law require that the seller state the mileage, purchaser's name, selling price and date sold in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. This title is warranted to be free from any liens except as noted on the face of the certificate and the motor vehicle or vessel described is hereby transferred to:

Seller Must Enter Purchaser's Name: _____
Address: _____
Seller Must Enter Selling Price: _____
Seller Must Enter Date Sold: _____

I/We state that this ☐ 5 or ☐ 6 digit odometer now reads |_|_|_|_|_|_| X | (no tenths) miles, date read _____ and I hereby certify that to the best of my knowledge the odometer reading is:
☐ 1. reflects ACTUAL MILEAGE.   ☐ 2. is IN EXCESS OF ITS MECHANICAL LIMITS.   ☐ 3. is NOT THE ACTUAL MILEAGE.

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

SELLER Must Sign Here: _____
Print Here: _____
Selling Dealer's License Number: _____
Auction Name: _____

CO-SELLER Must Sign Here: _____
Print Here: _____
Tax No.: _____
License Number: _____
Tax Collected: _____

PURCHASER Must Sign Here: _____
Print Here: _____

CO-PURCHASER Must Sign Here: _____
Print Here: _____

Exhibit B

NOTICE: PENALTY IS REQUIRED BY LAW IF NOT SUBMITTED FOR TRANSFER WITHIN 30 DAYS AFTER DATE OF PURCHASE

HSMV 82250 (REV. 3/15) — STATE OF FLORIDA

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| In re | | |
|---|---|---|
| | Case No | 18-21590 |
| Alfredo Lopez, | | |
| Debtor(s) | Chapter | 13 |

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF DAIMLER TRUST'S MOTION FOR RELIEF FROM STAY

Before me, the undersigned authority, personally appeared ___Sofia Taylor___, who, being duly sworn, deposes and says:

1  I am ___Sofia Taylor___. I am employed as a Bankruptcy Specialist by Daimler Trust ("Creditor")

2  This affidavit is based upon Creditor's loan payment records as of April 15, 2020. These records are regularly maintained in the course of business of Creditor and it is the regular practice of Creditor to make and maintain these records. These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information  I maintain these records for Creditor and regularly use and rely upon them in the performance of my duties.

3.  Debtor maintains a lease, account number XXXX2001, with Creditor  Creditor holds an ownership interest in the following property·

**2017 MERCEDES-BENZ GLS450W4, VIN 4JGDF6EEXHA846452**

4  The payments on this lease account, due for partial payment on February 8th, 2020 in the amount of $4.16, full payments from March 8th, 2020 through April 8th, 2020, in the amount of $1,021.26 each, Non-sufficient funds fees in the amount of $25.00, have not been received by Creditor.

1



Exhibit C

5   The payoff balance owed on this lease account is $53,564.58, as of April 15, 2020, excluding attorney fees and costs.

6   Creditor does not have current verifiable proof of collision and comprehensive insurance covering the vehicle

7   The contract and proof of title attached to this motion as exhibits are true and accurate copies of the original documents.

8.   This concludes my affidavit.

_____
Sofia Taylor

**SWORN TO AND SUBSCRIBED TO** before me under penalty of perjury as being true and correct based on the personal knowledge of Creditor's books and business records this __16__ day of __April__, __2020__, by __Sofia Taylor__, who is personally known to me.

NOTARY PUBLIC·

Sign: __M Wright__

Print: __Megan Wright__

State of Texas at Large

My Commission Expires· __9/23/2023__

MEGAN WRIGHT
Notary Public, State of Texas
Comm Expires 09-23-2023
Notary ID 132182207

2

```
                   UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF FLORIDA

IN RE:
ALFREDO LOPEZ,                      Case no. 18-21590-BKC-AJC
                                    Chapter 13 Case
        Debtor(s).         /
```

ORDER GRANTING DAIMLER TRUST'S MOTION TO CONFIRM THAT THE AUTOMATIC
<u>STAY IS NOT IN EFFECT</u>

**THIS CAUSE** came before the Court on **xxx**, 2020 at **xxx** p.m., on Daimler Trust's Motion To Confirm That The Automatic Stay Is Not In Effect (DE #XX). Upon consideration of the motion and the record, it is

**ORDERED** that:

1. The Motion To Confirm That The Automatic Stay Is Not In Effect *In Rem* As To The Vehicle filed by Daimler Trust ("Movant") is GRANTED and there is no stay in effect <u>in</u> <u>rem</u> and Movant may repossess or replevy

*Exhibit D* (handwritten)

the **2017 MERCEDES-BENZ GLS CLASS UTILITY 4D GLS450 AWD 3.0L V6 TURBO, VIN 4JGDF6EEXHA846452,** sell the vehicle, and apply the proceeds of the sale of the vehicle to the amount owed to Movant.

2. The codebtor stay imposed pursuant to 11 U.S.C. Section 1301 as it relates to Yanisleidy Garcia Hernandez has terminated and Movant may enforce its <u>in personam</u> rights against Yanisleidy Garcia Hernandez.

3. Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is not applicable.

###

Copies furnished via ECF to:

Gerard M. Kouri, Jr., Esq., counsel for Movant
Office of the US Trustee
Nancy K. Neidich, Trustee
Robert Sanchez, Esq., attorney for debtor

Attorney Kouri is directed to mail a conformed copy of this Order to Alfredo Lopez, debtor, and Yanisleidy Garcia Hernandez, non-debtor, immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.

Submitted by:
GERARD M. KOURI, JR., P.A.
5311 King Arthur Ave, Davie, FL 33331
Tel (954) 862-1731; Fax  (954) 862-1732
Email: gmkouripaecf@gmail.com

2